FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Aug 25, 2020

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| DANA B., | NO:  1:19-CV-3149-FVS |
| Plaintiff, | |
| v. | ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |
| ANDREW M. SAUL, COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

BEFORE THE COURT are the parties' cross motions for summary judgment.  ECF Nos. 11 and 12.  This matter was submitted for consideration without oral argument.  The Plaintiff is represented by Attorney Cory J. Brandt.  The Defendant is represented by Special Assistant United States Attorney Diana Andsager.  The Court has reviewed the administrative record, the parties' completed briefing, and is fully informed.  For the reasons discussed below, the Court **GRANTS** Defendant's Motion for Summary Judgment, ECF No. 12, and **DENIES** Plaintiff's Motion for Summary Judgment, ECF No. 11.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 1

1

**JURISDICTION**

2      Plaintiff Dana B.[1] protectively filed for disability insurance benefits on

3  March 14, 2016, alleging a disability onset date of December 22, 2015.  Tr. 183-

4  89.  Benefits were denied initially, Tr. 89-91, and upon reconsideration, Tr. 93-99.

5  Plaintiff appeared for a hearing before an administrative law judge ("ALJ") on

6  June 13, 2018.  Tr. 35-58.  Plaintiff was represented by counsel and testified at the

7  hearing.  *Id*.  The ALJ denied benefits, Tr. 12-33, and the Appeals Council denied

8  review.  Tr. 1.  The matter is now before this court pursuant to 42 U.S.C. § 405(g).

9

**BACKGROUND**

10      The facts of the case are set forth in the administrative hearing and

11  transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner.

12  Only the most pertinent facts are summarized here.

13      Plaintiff was 56 years old at the time of the hearing.  Tr. 39.  She has a

14  master's degree.  Tr. 39.  She had to move in with her parents when she started

15  experiencing seizures again, but at the time of the hearing she lived alone.  Tr. 40,

16  48.  Plaintiff has work history as a physical therapist.  Tr. 39, 49-50, 54.  She

17  testified that she could not continue to work as a physical therapist because after

18

---

19  [1] In the interest of protecting Plaintiff's privacy, the Court will use Plaintiff's first

20  name and last initial, and, subsequently, Plaintiff's first name only, throughout this

21  decision.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 2

her new neurologist discontinued her "old" epilepsy medication, she started having repeat seizures, which has affected her balance and caused memory loss.  Tr. 40.  Plaintiff also testified that she cannot work because of her depression and gastroparesis.  Tr. 40-41.

Plaintiff reported that she has severe nausea and vomiting for about a week, at least once a month, and "end[s] up back in the emergency room" for medication to stop the nausea.  Tr. 40-41.  She has ongoing sleep apnea and daytime sleepiness, has to lie down once or twice a day for one to three hours, has bladder accidents two to three times a day, and has petit mal seizures once a month that last 30 seconds to three minutes, after which she gets a "severe headache" and has to lie down for two to three hours.  Tr. 40-44.  Plaintiff testified that she has problems with balance, and uses a quad cane when she is out of the house.  Tr. 43-44.  She has been "a little depressed," has poor concentration, gets easily distracted, and doesn't have a very good memory.  Tr. 45-46.

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion."  *Id*. at 1159

(quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). Further, a district court will not reverse an ALJ's decision on account of an error that is harmless. *Id*. An error is harmless where it is "inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). Second, the claimant's impairment must be

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 4

"of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work activity.  20 C.F.R. § 404.1520(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 404.1520(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. § 404.1520(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. § 404.1520(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 404.1520(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. §

404.1520(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. § 404.1520(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 404.1545(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work).  20 C.F.R. § 404.1520(a)(4)(iv).  If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 404.1520(f).  If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy.  20 C.F.R. § 404.1520(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience.  20 C.F.R. § 404.1520(a)(4)(v).  If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not

disabled. 20 C.F.R. § 404.1520(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. § 404.1520(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 404.1560(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

At step one, the ALJ found Plaintiff has not engaged in substantial gainful since December 22, 2015, the alleged onset date. Tr. 17. At step two, the ALJ found Plaintiff has the following severe impairments: seizure disorder and affective disorder. Tr. 18. At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. Tr. 18. The ALJ then found that Plaintiff has the RFC

> to perform a full range of work at all exertional levels but with the following nonexertional limitations: she is unable to climb ladders, ropes, or scaffolds, and is not capable of performing work at unprotected heights or around dangerous or moving machinery. She is limited to simple, routine, and repetitive tasks.

Tr. 20.  At step four, the ALJ found that Plaintiff is unable to perform any past relevant work.  Tr. 26.  At step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, Plaintiff has acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy, including: packager, hand; cleaner, hospital; and laundry laborer.  Tr. 26-27.  On that basis, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, from December 22, 2015, through the date of the decision.  Tr. 27.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her disability insurance benefits under Title II of the Social Security Act.  ECF No. 11.  Plaintiff raises the following issues for this Court's review:

1.  Whether the ALJ erred at step two;

2.  Whether the ALJ properly weighed the medical opinion evidence;

3.  Whether the ALJ properly considered the lay witness evidence;

4.  Whether the ALJ properly considered Plaintiff's symptom claims; and

5.  Whether the ALJ erred at steps four and five.

## DISCUSSION

### A. Step Two

At step two of the sequential process, the ALJ must determine whether the claimant suffers from a "severe" impairment, i.e., one that significantly limits her physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c). To

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 8

establish a severe impairment, the claimant must first demonstrate that the impairment results from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical or laboratory diagnostic techniques. 20 C.F.R. § 404.1521. In other words, the claimant must establish the existence of the physical or mental impairment through objective medical evidence (i.e., signs, laboratory findings, or both) from an acceptable medical source; the medical impairment cannot be established by the claimant's statement of symptoms, a diagnosis, or a medical opinion. 20 C.F.R. §§ 404.1521, 416.921.

An impairment may be found to be not severe when "medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work … . ." Social Security Ruling (SSR) 85-28 at *3.  Similarly, an impairment is not severe if it does not significantly limit a claimant's physical or mental ability to do basic work activities; which include walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; seeing, hearing, and speaking; understanding, carrying out and remembering simple instructions; using judgment, responding appropriately to supervision, coworkers and usual work situations; and dealing with changes in a routine work setting.  20 C.F.R. § 404.1522(a).

Step two is "a de minimus screening device [used] to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).  "Thus, applying our normal standard of review to the requirements of step two, [the Court] must

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 9

determine whether the ALJ had substantial evidence to find that the medical evidence clearly established that [Plaintiff] did not have a medically severe impairment or combination of impairments." *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005).

Here, the ALJ resolved step two in Plaintiff's favor, finding Plaintiff has the following severe impairments: seizure disorder and affective disorder. Tr. 18. The ALJ also found that Plaintiff's type II diabetes mellitus and sleep apnea are non-severe impairments because "the record does not support [these conditions] causing more than minimal limitations in [Plaintiff's] performance of basic work activities." Tr. 18.

First, Plaintiff argues the ALJ improperly determined that Plaintiff's sleep apnea was not a severe impairment. ECF No. 11 at 7-8. The ALJ noted that Plaintiff testified that she required "multiple naps during the day" and that she used a bilevel positive airway pressure machine at night; however, the ALJ also cited evidence that Plaintiff reported she was not napping, was "getting continuous and restorative sleep with the use of the machine," and using Adderall to help with her daytime sleepiness. Tr. 18, 296. In addition, the ALJ cited multiple reports by Plaintiff that she showed "good improvement" with general compliance with her positive airway pressure therapy. Tr. 18, 582, 585. Plaintiff argues that "although her sleep quality was somewhat improved with treatment," she continued to report daytime sleepiness, fatigue, and taking two to three naps per day throughout the

1   record.  ECF No. 11 at 8 (citing Tr. 296, 574, 588, 587, 590).  Plaintiff also

2   testified that she had to lie down once or twice every day for one to three hours,

3   and that she was "terminated from her job due to attendance problems that she

4   attributed to sleep apnea."  ECF No. 11 at 8 (citing Tr. 42, 52-53).

5         However, as noted by Defendant, the records cited by Plaintiff indicate that

6   she reported daytime sleepiness and naps specifically when she did not use her

7   BPAP machine, and Plaintiff testified that she was dismissed from her job in large

8   part due her gastroparesis.  ECF No. 12 at 5 (citing Tr. 53, 587, 590, 593).

9   Moreover, "regardless of how many symptoms an individual alleges, or how

10   genuine the individual's complaints may appear to be, the existence of a medically

11   determinable physical or mental impairment cannot be established in the absence

12   of objective medical abnormalities, i.e., medical signs and laboratory findings."

13   *Ukolov v. Barnhart*, 420 F.3d 1002, 1005 (9th Cir. 2005).

14         Here, the evidence cited by Plaintiff is comprised entirely of Plaintiff's own

15   statements regarding her symptoms, and she fails to cite evidence "consisting of

16   signs, symptoms, and laboratory findings" to support a finding that sleep apnea

17   was a severe impairment.  This evidence, standing alone, does not meet Plaintiff's

18   burden to prove the existence of a "severe" medical impairment by providing

19   medical evidence consisting of "signs, symptoms, and laboratory findings" that

20   Plaintiff's sleep apnea would significantly limit Plaintiff's ability to do basic work

21   activities for at least twelve continuous months.  20 C.F.R. §§ 404.1505, 404.1508

1    (claimant's own statements alone will not suffice to prove the existence of an

2    impairment).

3        Second, Plaintiff argues the ALJ erred by failing to consider her

4    gastroparesis at step two.  ECF No. 11 at 8-9.  However, while not acknowledged

5    by Plaintiff, the ALJ did consider her "gastrointestinal issues" and found they

6    "generally resolved quickly with medication," to the point that by March 2018 her

7    treating provider noted her gastroparesis was asymptomatic.  Tr. 23 (citing Tr. 404,

8    476-78, 634, 768.  Moreover, Plaintiff's argument is based solely on her testimony

9    at the hearing that gastroparesis "caused her to have nausea and vomiting for about

10   a week every month," "prevented her from eating and taking her medication," and

11   "after a period of four or five days of this, she would end up in the emergency

12   room."  ECF No. 11 at 8 (citing Tr. 40-41).  As above, the evidence cited by

13   Plaintiff is entirely comprised of Plaintiff's own statements regarding her

14   symptoms, and this evidence, standing alone, does not meet Plaintiff's burden to

15   prove the existence of a "severe" medical impairment by providing medical

16   evidence consisting of "signs, symptoms, and laboratory findings" that Plaintiff's

17   gastroparesis would significantly limit her ability to do basic work activities for at

18   least twelve continuous months.  20 C.F.R. §§ 404.1505, 404.1508.

19       Finally, even assuming, *arguendo*, that the ALJ erred in considering

20   Plaintiff's sleep apnea and gastroparesis, any error is harmless because Plaintiff

21   fails to specifically identify how these alleged impairments result in limitations

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 12

1    beyond those included in the assessed RFC.  *See Lewis v. Astrue,* 498 F.3d 909,

2    911 (9th Cir. 2007) (holding that ALJ's failure to list plaintiff's bursitis as a severe

3    impairment at step two was harmless where ALJ considered limitations caused by

4    the condition at step four); *see also Molina*, 674 F.3d at 1115 (error is harmless

5    "where it is inconsequential to the [ALJ's] ultimate nondisability determination").

6    As discussed below, the ALJ properly weighed the opinion evidence and Plaintiff's

7    symptom claims; and as a result, the RFC incorporated the limitations supported by

8    substantial evidence in the record.  The Court finds no error at step two.

9    **B. Medical Opinions**

10    There are three types of physicians: "(1) those who treat the claimant

11    (treating physicians); (2) those who examine but do not treat the claimant

12    (examining physicians); and (3) those who neither examine nor treat the claimant

13    [but who review the claimant's file] (nonexamining [or reviewing] physicians)."

14    *Holohan v. Massanari,* 246 F.3d 1195, 1201–02 (9th Cir.2001) (citations omitted).

15    Generally, a treating physician's opinion carries more weight than an examining

16    physician's, and an examining physician's opinion carries more weight than a

17    reviewing physician's.  *Id.*  If a treating or examining physician's opinion is

18    uncontradicted, the ALJ may reject it only by offering "clear and convincing

19    reasons that are supported by substantial evidence."  *Bayliss v. Barnhart,* 427 F.3d

20    1211, 1216 (9th Cir.2005).  Conversely, "[i]f a treating or examining doctor's

21    opinion is contradicted by another doctor's opinion, an ALJ may only reject it by

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 13

providing specific and legitimate reasons that are supported by substantial

evidence." *Id.* (citing *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995)).

"However, the ALJ need not accept the opinion of any physician, including a

treating physician, if that opinion is brief, conclusory and inadequately supported

by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.,* 554 F.3d 1219, 1228

(9th Cir. 2009) (quotation and citation omitted).

      The opinion of an acceptable medical source such as a physician or

psychologist is generally given more weight than that of an "other source." *See*

SSR 06-03p (Aug. 9, 2006), *available at* 2006 WL 2329939 at *2; 20 C.F.R. §

416.927(a). "Other sources" include nurse practitioners, physician assistants,

therapists, teachers, social workers, and other non-medical sources.  20 C.F.R. §§

404.1513(d), 416.913(d).  The ALJ need only provide "germane reasons" for

disregarding an "other source" opinion.  *Molina*, 674 F.3d at 1111.  However, the

ALJ is required to "consider observations by nonmedical sources as to how an

impairment affects a claimant's ability to work." *Sprague v. Bowen,* 812 F.2d

1226, 1232 (9th Cir. 1987).

      Plaintiff argues the ALJ erroneously considered the opinions of Plaintiff's

treating providers Elizabeth A. Dunbar, ARNP, and Charles Bulfinch, M.D.  ECF

No. 11 at 9-11.

/ / /

/ / /

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 14

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

    *1. Elizabeth A. Dunbar, ARNP*

    In June 2017, treating psychiatric nurse practitioner Elizabeth A. Dunbar, ARNP, opined that Plaintiff would have marked limitations in her ability to understand and remember very short and simple instructions; understand and remember detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances; and work in coordination with or proximity to others without being distracted by them.  Tr. 431-32.  Ms. Dunbar further opined that Plaintiff would miss four or more days per month if she attempted to work a 40-hour per week schedule, and would be off task more than 50% throughout the workday.  Tr. 433.  The ALJ assigned Ms. Dunbar's opinion little weight because it is "inconsistent with the record because [Plaintiff's] mental status examinations and own testimony showed her to have mental limitations extending to being limited to simple, routine, and repetitive tasks, but no evidence in the record supporting [Plaintiff] having marked-level limitations."  Tr. 25.

    First, an ALJ may discount an opinion that is conclusory, brief, and unsupported by the record as a whole, or by objective medical findings.  *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007)  (the consistency of a medical opinion with the record as a whole is a relevant factor in the ALJ's evaluation of a medical opinion).  Here, in support of this finding, the ALJ cites consistently normal mental

status examination results throughout the relevant adjudicatory period, including

Ms. Dunbar's own treatment notes.  These records include findings that Plaintiff

was cooperative and pleasant; "calm without any psychomotor agitation or

retardation"; linear and goal-directed; appropriate and logical thought process;

normal rate, rhythm, and volume of speech; full range and euthymic affect; fully

oriented; normal recent and remote memory; normal mood and affect; and normal

judgment.  Tr. 368-69, 407, 482, 497, 499, 502, 504, 507, 509, 511, 516, 643, 647,

656, 660, 681, 688, 769, 796, 819, 823, 829, 835-36, 837.  Moreover, the ALJ cited

Plaintiff's own reports that her anxiety and depression were "well controlled" on

medication, and she was making good progress toward treatment goals.  Tr. 21-22,

25, 369, 450, 796, 809, 811, 815, 833, 837.

Plaintiff argues that the record also included "findings of depression and

anxiety," and cited a single treatment record from January 2018 noting that

Plaintiff's "mood/affect" was "depressed."  ECF No. 11 at 10 (citing Tr. 819).

However, the same treatment note cited by Plaintiff included findings that Plaintiff

had normal psychomotor activity, regular speech, coherent and logical thought

process, normal impulse control, and good "eye contact/relatedness."  Tr. 819.  In

addition, Plaintiff argued that Ms. Dunbar "based her opinion on several months of

treatment history with [Plaintiff].  Her understanding of [Plaintiff's] conditions

would therefore include knowledge of [Plaintiff's] symptoms on both good and

bad days, instead of just good days when she could present to appointments."  ECF

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 16

No. 11 at 10.  However, as discussed above, the benign mental status examination findings cited by the ALJ include Ms. Dunbar's own clinical findings.  Tr. 25, 497, 499, 502, 504, 507, 509, 511, 516; *See Tommasetti*, 533 F.3d at 1041(it is proper for an ALJ to reject a medical opinion if it is inconsistent with the provider's own treatment notes).

Based on the foregoing, and regardless of evidence that could be considered more favorable to Plaintiff, it was reasonable for the ALJ to reject Ms. Dunbar's opinion because it was inconsistent with the objective mental status examinations, including Ms. Dunbar's own treatment notes, and inconsistent with Plaintiff's own testimony.  *See Burch*, 400 F.3d at 679.  The Court finds this was a specific and germane reason, supported by substantial evidence, to discount Ms. Dunbar's opinion.

### 2.  Charles Bulfinch, M.D.

In September 2016, treating physician, Dr. Charles Bulfinch, completed a physical functional evaluation of Plaintiff.  Tr. 426-28.  Dr. Bulfinch noted that Plaintiff's diagnosis of epilepsy moderately limited her ability to perform basic work-related activities including standing, walking, lifting, crying, handling, pushing, pulling, reaching, stooping, and crouching.  Tr. 427.  Dr. Bulfinch opined that Plaintiff was limited to sedentary work.  Tr. 428.  The ALJ gave Dr. Bulfinch's opinion little weight because it is "inconsistent with the record because

1  [Plaintiff's] medical examinations, statements to providers, and own testimony

2  support that she is capable of all exertional levels of work."  Tr. 25.

3        Plaintiff briefly argues, without citation to the record, that the ALJ's

4  rejection of Dr. Bulfinch's opinion was error because he "based this opinion on

5  symptoms including low energy, a lack of stamina, intermittent seizures, memory

6  loss, trouble with comprehension, and decreased balance, which are all supported

7  by the record."  ECF No. 11 at 11.  However, as above, an ALJ may discount an

8  opinion that is conclusory, brief, and unsupported by the record as a whole, or by

9  objective medical findings.  *Batson*, 359 F.3d at 1195; see also *Orn*, 495 F.3d at

10  631 (the consistency of a medical opinion with the record as a whole is a relevant

11  factor in the ALJ's evaluation of a medical opinion).  Here, in support of this

12  finding, the ALJ cites medical examinations indicating that Plaintiff's epilepsy

13  improved with treatment, including multiple treatment notes from Plaintiff's

14  neurologist Dr. Richard Sloop.  Tr. 25.  Dr. Sloop's treatment notes indicate that

15  Plaintiff's seizures were well controlled with treatment for many years until she

16  had a sudden marked increase in seizures after discontinuing her seizure

17  medication, but by July 2017 the results of objective EEG testing were

18  "considerably improved," and Dr. Sloop indicated her seizures were under control.

19  Tr. 320, 371-72 (noting that he was "not ready to declare her disabled" and opining

20  that she should be able to get back to work with treatment), 382-83, 390-91, 488,

21  692.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 18

1    Moreover, as noted by Defendant, "Dr. Bulfinch's opinion, dated September

2    2016, refers to Dr. Sloop as Plaintiff's local neurologist." ECF No. 12 at 9.  Dr.

3    Bulfinch's own treatment notes acknowledge that "by [Plaintiff's] reported

4    symptoms she sounds disabled, [but] as a family medicine doctor [he doesn't]

5    really have an effective away to treat her objectively," and Dr. Bulfinch

6    specifically references Dr. Sloop's indication that he "does not believe [Plaintiff] is

7    disabled in relation to her seizures." Tr. 656, 688.  Finally, as noted by the ALJ,

8    Plaintiff has consistently reported that she had improvement since resuming the use

9    of her epilepsy medication, denied having the headaches she typically experiences

10    after a seizure, and has resumed driving.  Tr. 43 (testifying that after a petit mal

11    seizure she "gets a severe headache"), 48-49, 51, 318, 362, 371, 404, 419, 488,

12    575, 638, 651, 664, 669, 747, 822.

13    For all of these reasons, the Court finds no error in the ALJ's rejection of Dr.

14    Bulfinch's opinion because it was inconsistent with the medical evidence and

15    Plaintiff's self-reports.  *See Burch*, 400 F.3d at 679 (ALJ's conclusion must be

16    upheld where evidence is susceptible to more than one rational interpretation).

17    **C. Plaintiff's Symptom Claims**

18    An ALJ engages in a two-step analysis when evaluating a claimant's

19    testimony regarding subjective pain or symptoms.  "First, the ALJ must determine

20    whether there is objective medical evidence of an underlying impairment which

21    could reasonably be expected to produce the pain or other symptoms alleged."

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 19

*Molina*, 674 F.3d at 1112 (internal quotation marks omitted). "The claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom he has alleged; he need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id*. (quoting *Lester*, 81 F.3d at 834); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin*., 278 F.3d 920, 924 (9th Cir. 2002)).

Here, the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, Plaintiff's "statements concerning the intensity, persistence and limiting effects of

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 20

these symptoms are not entirely consistent with the medical evidence and other evidence in the record" for several reasons. Tr. 21. As an initial matter, while not addressed by Plaintiff, the ALJ noted that the consultative psychological examiner found that Plaintiff did not appear depressed or anxious during the examination, and "suspected [Plaintiff] may have been exaggerating her symptoms." Tr. 24. The tendency to exaggerate is a permissible reason for discounting a Plaintiff's credibility. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001).

In addition, the ALJ discounted Plaintiff's symptom claims because (1) the overall record does not substantiate disabling mental or physical disorder, and (2) Plaintiff reported improvement in her claimed mental and physical impairments. Tr. 21-24. An ALJ may not discredit a claimant's pain testimony and deny benefits solely because the degree of pain alleged is not supported by objective medical evidence. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989). However, the medical evidence is a relevant factor in determining the severity of a claimant's pain and its disabling effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. § 404.1529(c)(2). Moreover, the effectiveness of medication and treatment is a relevant factor in determining the severity of a claimant's symptoms. *See Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (conditions effectively controlled with medication are not disabling for purposes of determining eligibility for benefits) (internal citations

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 21

omitted); *see also Tommasetti*, 533 F.3d at 1040 (a favorable response to treatment can undermine a claimant's complaints of debilitating pain or other severe limitations).

Here, the ALJ set out, in detail, the medical evidence contradicting Plaintiff's claims of disabling mental and physical limitations.  Tr. 22-23.  For example, as to her claimed mental health limitations, Plaintiff reported improvement in her mental health symptoms, and mental status examinations were normal throughout the record.  As noted by the ALJ, mental status examinations throughout the relevant adjudicatory period noted that Plaintiff was cooperative and pleasant; "calm without any psychomotor agitation or retardation"; linear and goal-directed; appropriate and logical thought process; normal rate, rhythm, and volume of speech; affect is full range and euthymic; fully oriented; normal recent and remote memory; normal mood and affect; and normal judgment.  Tr. 368-69, 407, 482, 497, 499, 502, 504, 507, 509, 511, 516, 643, 647, 656, 660, 681, 688, 769, 796, 819, 823, 829, 835-36, 837.  Moreover, the ALJ cited Plaintiff's own reports that her anxiety and depression were "well controlled" on medication, and she was making good progress toward treatment goals.  Tr. 21-22, 25, 369, 450, 796, 809, 811, 815, 833, 837.

Similarly, as to her claimed physical limitations, the ALJ acknowledged that Plaintiff had an increase in seizures after she discontinued taking her medication in January 2016.  Tr. 22, 316-20.  However, in May 2016 Plaintiff's treating

neurologist noted Plaintiff's seizures were "definitely better" after the resumption of medication; in July 2016 Plaintiff and her parents reported they had not witnessed any epileptic events; in July 2017 EEG results showed reduction in discharges and noted "considerable" improvement over Plaintiff's February 2016 EEG results; and Plaintiff's neurological findings were "generally normal" during the relevant adjudicatory period.  Tr. 22-23 (citing Tr. 371, 450, 488, 594-96, 643, 656, 688, 692, 773).  As noted by Defendant, "Plaintiff herself testified that she had a good response to her medication."  ECF No. 12 at 14; Tr. 24, 51.

Plaintiff generally argues that "[a]lthough medication was reported to improve some of [Plaintiff's] conditions, they did not fully resolve them."  ECF No. 11 at 12-13.  In support of this argument, Plaintiff cites (1) a single record indicating that Plaintiff was depressed and had impaired memory; (2) the February 2016 EEG report, acknowledged by the ALJ, indicating that Plaintiff's epilepsy was not well controlled after she was taken off her long-term medication; and (3) Ms. Dunbar and Dr. Bulfinch's "medical opinions.  ECF No. 11 at 12-13 (citing Tr. 312, 369, 819).  However, as discussed above, the ALJ's rejection of these medical opinions was supported by substantial evidence.  Moreover, regardless of evidence that could be interpreted more favorably to the Plaintiff, it was reasonable for the ALJ to discount Plaintiff symptom claims as inconsistent with the overall medical record, including evidence of improvement with treatment.  *See Burch*, 400 F.3d at 679 (ALJ's conclusion must be upheld where evidence is susceptible to

more than one rational interpretation).  The lack of corroboration of Plaintiff's

claimed limitations by the medical evidence, and consistent reports of

improvement of her symptoms with treatment, were clear and convincing reasons,

supported by substantial evidence, for the ALJ to discount Plaintiff's symptom

claims.

       The Court concludes that the ALJ provided clear and convincing reasons,

supported by substantial evidence, for rejecting Plaintiff's symptom claims.

### D. Lay Witness Evidence

       "In determining whether a claimant is disabled, an ALJ must consider lay

witness testimony concerning a claimant's ability to work."  *Stout v. Comm'r, Soc.*

*Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006); *see also Dodrill v. Shalala*, 12

F.3d 915, 918-19 (9th Cir. 1993) ("friends and family members in a position to

observe a claimant's symptoms and daily activities are competent to testify as to

[his] condition.").  To discount evidence from lay witnesses, an ALJ must give

reasons "germane" to each witness.  *Dodrill*, 12 F.3d at 919.

       Here, Plaintiff's mother, Loretta Betsch completed a third party function

report and a seizure questionnaire.  Tr. 215.  Ms. Betsch indicated that Plaintiff

was unsteady on her feet; her memory, ability to complete tasks, and concentration

are "very slow"; and Plaintiff "can't go or do anything."  Tr. 219-20.  Further, Ms.

Betsch reported in 2016 that she witnessed Plaintiff's petit mal seizures every day,

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 24

1   and they usually last 30 seconds to four minutes.  Tr. 225-26.  The ALJ considered

2   Ms. Betsch's reports, but found them "not persuasive."  Tr. 25.

3          First, the ALJ gave limited weight to Ms. Betsch's opinion because it was

4   based on casual observation rather than objective medical examination and testing.

5   Tr. 25.  Although "medical diagnoses are beyond the competence of lay witnesses

6   and therefore do not constitute competent evidence," lay testimony "as to a

7   claimant's symptoms or how an impairment affects ability to work *is* competent

8   evidence." *Nguyen*, 100 F.3d at 1467 (emphasis in original); *see also Dodrill v.*

9   *Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993) ("[F]riends and family members in a

10  position to observe a claimant's symptoms and daily activities are competent to

11  testify as to her condition"). Thus, this was not a germane reason to discredit Ms.

12  Betsch's statements.

13         However, this error is harmless because the ALJ gave an additional germane

14  reason, supported by substantial evidence, for rejecting Ms. Betsch's lay witness

15  statement. *See Carmickle*, 533 F.3d at 1162-63.  The ALJ found that "[u]ltimately,

16  these statements are not persuasive for the same reasons set forth above in finding

17  [Plaintiff's] allegations to be less than wholly consistent with the objective medical

18  evidence." Tr. 25.  Where the ALJ gives clear and convincing reasons to reject a

19  claimant's testimony, and where a lay witness's testimony is similar to the

20  claimant's subjective complaints, the reasons given to reject the claimant's

21  testimony are also germane reasons to reject the lay witness testimony.  *See*

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 25

1    *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009); *see also*

2    *Molina*, 674 F.3d at 1114 ("[I]f the ALJ gives germane reasons for rejecting

3    testimony by one witness, the ALJ need only point to those reasons when rejecting

4    similar testimony by a different witness"). Thus, the ALJ's well-supported reasons

5    for rejecting Plaintiff's subjective symptom claims, as discussed above, apply

6    equally to Betsch's statements.  This was a germane reason to discount Ms.

7    Betsch's lay testimony.

8        **E. Step Five**

9        Finally, Plaintiff argues that the "ALJ's hypothetical failed to account for

10    limitations set forth by [Plaintiff's] providers, [Plaintiff], and the lay witness.

11    Because the ALJ's hypothetical did not reflect all of [Plaintiff's] limitations, the

12    vocational expert's testimony in response to his hypothetical had no evidentiary

13    value, and the ALJ failed to meet his step five burden."  ECF No. 11 at 16; *Bray*,

14    554 F.3d at 1228 ("[i]f an ALJ's hypothetical does not reflect all of the claimant's

15    limitations, the expert's testimony has no evidentiary value to support a finding that

16    the claimant can perform jobs in the national economy.").  However, as discussed

17    in detail above, the ALJ's findings at step two, consideration of the medical

18    opinion evidence, rejection of Plaintiff's symptom claims, and rejection of the lay

19    witness testimony, was supported by the record and free of legal error.  The

20    hypothetical posed to the vocational expert contained the limitations reasonably

21

identified by the ALJ and supported by substantial evidence in the record.  Thus, the ALJ did not err at step five.

## CONCLUSION

A reviewing court should not substitute its assessment of the evidence for the ALJ's.  *Tackett*, 180 F.3d at 1098.  To the contrary, a reviewing court must defer to an ALJ's assessment as long as it is supported by substantial evidence.  42 U.S.C. § 405(g).  As discussed in detail above, the ALJ properly evaluated Plaintiff's impairments at step two; properly weighed the medical opinion evidence; properly considered the lay witness statement; provided clear and convincing reasons to discount Plaintiff's symptom testimony; and did not err at step five.  After review the court finds the ALJ's decision is supported by substantial evidence and free of harmful legal error.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1.  Plaintiff's Motion for Summary Judgment, **ECF No. 11**, is **DENIED**.

2.  Defendant's Motion for Summary Judgment, **ECF No. 12**, is

    **GRANTED**.

The District Court Executive is hereby directed to enter this Order and provide copies to counsel, enter judgment in favor of the Defendant, and **CLOSE** the file.

**DATED** August 25, 2020.      _____*s/ Rosanna Malouf Peterson*_____
                                    ROSANNA MALOUF PETERSON
                                    United States District Judge

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 27